WESTINGHOUSE ELECTRIC SUPPLY CO. *vs.* ALDO GRAMOLINI.

FEBRUARY 8, 1961.

PRESENT: Condon, C.J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This is an action of assumpsit on book account for merchandise allegedly sold by the plaintiff to the defendant. After a trial before a justice of the superior court sitting without a jury a decision was rendered for the plaintiff for the full amount of its claim. The case is before us on the defendant's exception to such decision.

The defendant contends in substance that the decision of the trial justice is against the evidence and that in fact the preponderance of the evidence establishes that the sales in question were made by plaintiff to a corporation of which defendant was an officer, and not to defendant personally. In his decision the trial justice found that said sales were made to defendant and that this was not a suit upon a guarantee, but that it was an action based on sales to defendant personally.

It appears that defendant was the treasurer of a Rhode Island corporation operating under the name of "Ye Olde Colonial Village, Inc." and engaged in the building construction business. The plaintiff was a dealer of electric household fixtures and appliances. It is undisputed that during June and July 1957, and for sometime prior thereto as well, defendant ordered certain merchandise from plaintiff through one of plaintiff's salesmen. It is clear from the

record that said merchandise was installed in certain homes constructed by the above-mentioned corporation of which defendant was treasurer.

The narrow issue raised by the instant record is whether plaintiff extended credit to defendant personally or to the corporation of which he was treasurer. The evidence on this issue is in direct conflict. The defendant testified that he had ordered the merchandise in question for the corporation in his capacity as treasurer and not for himself; that he had notified plaintiff that he was not to be charged personally; that plaintiff's salesman with whom he did business was aware of this arrangement; and that he had signed no agreement stating that he personally would be responsible for the merchandise in question. The defendant also stated that the only written agreement relating to such merchandise was a pricing agreement which was signed by plaintiff and the building corporation, but he did not introduce such agreement in evidence.

The plaintiff's evidence, as we have already indicated, was directly in conflict with defendant's version. The plaintiff's regional credit manager testified that their office records indicated that credit had been extended to defendant individually and he presented five ledger cards which were introduced in evidence as plaintiff's exhibit 1. These cards had notations on them stating that the items in question were charged to defendant personally. Four shipping invoices were also introduced in evidence as plaintiff's exhibits 2, 3, 4 and 5. They also had notations stating that the items in question were charged to defendant personally.

The defendant admitted receiving bills charging him for the merchandise in question. He stated that each time he received such a bill he would protest and request plaintiff not to charge him individually. But he admitted that he continued to order merchandise. The plaintiff's credit manager admitted that prior to the time that any one of said bills was issued defendant requested that plaintiff bill

the building corporation. But the credit manager stated that at such times he told defendant that due to the fact that the building corporation did not have sufficient net worth according to a credit report which plaintiff had in its possession, it would not or could not bill the building corporation. The credit manager also testified that he told defendant that if he did not want to be billed personally, plaintiff would not ship the merchandise. Finally he stated that after such conversation defendant continued to order the merchandise.

We have discussed the evidence in some detail only to point out the conflict therein on the decisive issue in this case. The trial justice clearly gave credibility to the testimony of plaintiff's witness and placed great weight on the notations on the ledger cards and shipping invoices which were in evidence. It is just as clear that he did not believe defendant's recollection of what transpired when the merchandise in question was ordered and that he was not impressed by the testimony about the so-called pricing agreement which defendant said he could not produce in evidence.

On the basis of the instant record the only issue before us under defendant's exception is whether the findings of the trial justice are clearly wrong or whether he has overlooked or misconceived material evidence. *Mitsmenn* v. *Mitsmenn*, 82 R. I. 23; *Arbolino* v. *Arbolino*, 89 R. I. 307, 152 A.2d 541.

After carefully examining the entire record we are satisfied that there is nothing therein which would justify us in holding, as the defendant argues, that the decision of the trial justice was against the weight of the evidence. On the contrary it is our opinion that his decision, which depended on the question of credibility, is supported in that respect. It is also our opinion that he has not overlooked or misconceived any material evidence. Finally we are satisfied that the evidence supports the finding of the trial justice that this was not a suit upon a guarantee, but that

it was an action based upon defendant's primary obligation to pay for the merchandise in question regardless of who was to make use of it. In view of the validity of such finding the statute of frauds does not apply to the facts of the instant case. In the circumstances we must conclude that the decision of the trial justice is not clearly wrong.

The defendant's exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*David Hassenfeld*, for plaintiff.

*William L. Parent*, for defendant.